IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL HANDIAZ,<br><br>          Plaintiff,<br><br>   v.<br><br>SHARPSPRING, INC., RICHARD A. CARLSON, STEVEN A. HUEY, SAVNEET SINGH, DAVID A. BUCKEL, AND SCOTT MILLER,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Daniel Handiaz ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by SharpSpring, Inc. ("SharpSpring" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SharpSpring and the Defendants.

SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against SharpSpring and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section

14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Constant Contact, Inc. ("Constant Contact") (the "Proposed Transaction").

2. On June 21, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Constant Contact. Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $17.10 in cash for each share they own (the "Merger Consideration").

3. On July 30, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SharpSpring and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SharpSpring shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of SharpSpring shares.

9. Defendant SharpSpring is incorporated under the laws of Delaware and has its principal executive offices located at 5001 Celebration Pointe Avenue, Suite 410, Gainesville, Florida 32608. The Company's common stock trades on the Nasdaq Stock Exchange under the symbol "SHSP."

10. Defendant Richard A. Carlson ("Carlson") is and has been the Chief Executive Officer ("CEO"), President and a SharpSpring director at all times during the relevant time period.

11. Defendant Steven A. Huey ("Huey") is and has been the Chairman of the Board SharpSpring at all times during the relevant time period.

12. Defendant Savneet Singh ("Singh") is and has been a SharpSpring director at all times during the relevant time period.

13. Defendant David A. Buckel ("Buckel") is and has a SharpSpring director at all times during the relevant time period.

14. Defendant Scott Miller ("Miller") is and has been a SharpSpring director at all times during the relevant time period.

15. Defendants Carlson, Huey, Singh, Buckel, and Miller are collectively referred to herein as the "Individual Defendants."

16. The Individual Defendants, along with Defendant SharpSpring, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17. SharpSpring operates as a cloud-based marketing technology company worldwide. The Company offers SharpSpring, a marketing automation Software as a Service platform that uses features, such as web tracking, lead scoring, and automated workflow, as well as enables a business to store, manage, and optimize customer and prospect data in a cloud-based environment; and SharpSpring Mail+ product, a subset of the full suite solution, which focuses on traditional email marketing. It also provides Perfect Audience, a cloud-based platform that offers display retargeting software products and services. The Company serves various organizations, including marketing agencies and small and medium size businesses, associations, and non-profits. It markets and sells its products and services through internal sales teams and third-party resellers. The Company was formerly known as SMTP, Inc. and changed its name to SharpSpring, Inc. in December 2015. SharpSpring, Inc. was founded in 1998 and is headquartered in Gainesville, Florida.

**The Company Announces the Proposed Transaction**

18.     On June 22, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> WALTHAM, Mass. and GAINESVILLE, Fla., June 22, 2021 /PRNewswire/ -- Constant Contact, an established leader in online marketing, backed by Clearlake Capital Group, L.P. (together with its affiliates, "Clearlake") and Siris Capital (together with its affiliates, "Siris"), today announced it has signed a definitive agreement to acquire SharpSpring, Inc. ("SharpSpring") (NASDAQ: SHSP) in an all cash transaction valued at approximately $240 million including outstanding indebtedness.
>
> Under the terms of the agreement, which has been unanimously approved by the members of SharpSpring's Board of Directors, Constant Contact will acquire all the outstanding common stock of SharpSpring for $17.10 per share in cash.  The purchase price represents a 21% premium over SharpSpring's closing share price of $14.11 as of June 21, 2021.  The transaction is expected to close in the third quarter of 2021 subject to customary closing conditions including a SharpSpring stockholder approval.
>
> SharpSpring is a cloud-based revenue growth and marketing automation platform that improves the effectiveness of small business's (SMBs) marketing strategy. Designed for SMBs, and often delivered by digital marketing agencies, SharpSpring generates leads, improves conversions to sales, and drives higher returns on marketing investments. The integration of SharpSpring will give Constant Contact's SMB clients the ability to easily and successfully engage customers throughout their journey, helping clients deliver better marketing-driven results.
>
> "Constant Contact and SharpSpring share a mission to help small businesses succeed, and this acquisition represents a powerful opportunity to combine our best-in-class email and ecommerce offerings with SharpSpring's strong suite of revenue growth and marketing automation tools," said Frank Vella, CEO, Constant Contact. "Today's Constant Contact retains the customer-first culture that defined our heritage, and I am excited to expand upon that with a commitment to innovation that will accelerate our growth and build upon the passion and agility that has made our brand a leader in digital marketing for so many years."
>
> "SharpSpring delivers a highly innovative and feature-rich suite of marketing automation software tools. We welcome the company's talented workforce to Constant Contact and look forward to a long partnership," said James Pade, Partner, Clearlake, and Tyler Sipprelle, Managing Director, Siris. "This

investment augments Constant Contact's digital marketing software platform by significantly accelerating its product roadmap and enhancing the tools we offer modern-day marketers in their pursuit of key revenue generating activities."

"Today is a great day for SharpSpring and our stockholders as this transaction brings immediate and certain value at an attractive premium," said Rick Carlson, CEO, SharpSpring. "Today is also a great day for our team and our customers, as we partner with a scale platform that brings significant added resources as we strive to deliver even greater value to SMBs. Constant Contact is the authority on digital marketing for small businesses. I am thrilled with the opportunity to bring SharpSpring's revenue growth platform to Constant Contact's nearly 500,000 small business customers while also further investing in and building upon SharpSpring's strong customer and digital marketing agency base."

For more information regarding the terms and conditions contained in the definitive agreement, please see SharpSpring's Current Report on Form 8-K, which will be filed in connection with this transaction.

JMP Securities LLC is acting as exclusive financial advisor and Godfrey & Kahn, S.C. is acting as legal counsel to SharpSpring, Inc. Lazard is acting as financial advisor to Constant Contact and Sidley Austin LLP is acting as legal counsel to Constant Contact.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

19.     On July 30, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

6

21.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

22.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

23.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

24.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

25. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding JMP's Financial Opinion**

26. The Proxy Statement contains the financial analyses and opinion of JMP Securities LLC ("JMP") concerning the Proposed Transaction, but fails to provide material information concerning such.

27. With respect to JMP's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated net present value of the Company's after-tax free cash flows; (ii) the inputs and assumptions underlying JMP's use of the discount rate range of 11.5% to 13.5%; (iii) the Company's weighted average cost of capital; (iv) SharpSpring's terminal values; (v) the inputs and assumptions underlying JMP's use of the multiples ranging from 3.5x to 5.0x; (vi) the net debt of the Company; and (vii) the number of fully diluted shares of Company common stock.

28. With respect to JMP's *Public Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

29. With respect to JMP's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each transaction observed by JMP in the analysis.

30. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

8

range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

31. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

32. The Proxy Statement fails to disclose material information regarding the process conducted by the Company and the events leading up to the Proposed Transaction.

33. Specifically, the Proxy Statement fails to disclose: (i) sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid; (ii) sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

34. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of SharpSpring within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SharpSpring, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 13, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*